UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM ANGLEMYER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.  C07-5304BHS<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for April 18, 2008 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrate Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976).  This matter has been briefed by the parties.  The undersigned submits the following report, recommending that the Court affirm the administration's decision to deny Plaintiff's application for social security benefits.

**<u>INTRODUCTION</u>**

Plaintiff, William Anglemyer, was born in 1974.  He is currently 33 years old, and he has obtained his G.E.D.  Plaintiff has received training to be a locksmith, and he has past relevant work experience as a laborer, amusement ride operator, snowboard instructor, ski lift operator, taxi driver, locksmith, cook, waiter, and clerk.

In September 2003, Plaintiff filed applications for disability insurance benefits under Title II of the Social Security Act and for Supplemental Security Income payments under Title XVI of the Act.  He

1  alleged disability since February 1, 2003, based on bipolar disorder, developmental disability,
2  posttraumatic stress disorder, and hepatitis C (Tr. 87). Plaintiff's applications were denied at the initial
3  and reconsideration administrative levels. Plaintiff filed a Request for Hearing, and on April 19, 2006, an
4  ALJ conducted a hearing where Plaintiff appeared and testified (Tr. 298-300). A vocational expert (VE)
5  also testified at the hearing. On September 7, 2006, the ALJ issued a decision finding Plaintiff not
6  disabled as defined in the Social Security Act (Tr. 19-27). The Appeals Council denied Plaintiff's
7  request for review (Tr. 5), making the ALJ's decision the Commissioner's final decision. See 20 C.F.R. §§
8  404.981, 416.1481, 422.210.

9  Plaintiff now brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as
10 amended, 42 U.S.C. § 405(g), to obtain judicial review of the final decision denying plaintiff's application
11 for social security benefits. Specifically, plaintiff raises the following arguments: (1) the ALJ failed to
12 properly evaluate the opinions of Dr. Mashburn; (2) the ALJ failed to follow the proper process for
13 evaluating substance abuse; (3) the ALJ erroneously evaluated the opinions of non-examining state-
14 agency psychologists Dr. Nelson and Dr. Fisher; (4) the ALJ failed to fulfill the edicts of SSR 00-4p; and
15 (5) substantial evidence does not support the ALJ's finding that Plaintiff has not exertional limitations.

## DISCUSSION

17 The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the
18 decision is supported by substantial evidence in the record. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th
19 Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such
20 relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v.
21 Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a
22 scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975);
23 Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one
24 rational interpretation, this Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d
25 577, 579 (9th Cir. 1984).

### A. THE ALJ PROPERLY ASSESSED THE MEDICAL OPINIONS

27 The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226,
28 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical

experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion. Here, plaintiff contends the ALJ failed to properly consider the opinions of Dr. Mashburn, Dr. Nelson and Dr. Fisher.

On June 16, 2006, Dr. Mashburn performed a consultative psychological examination at the ALJ's request. Dr. Mashburn's report is contained in the record (Tr. 277-284), and the ALJ specifically referenced Dr. Mashburn's opinion in the decision to deny Plaintiff's applications for benefits. Dr Mashburn reviewed Plaintiff's relevant history, summarized his daily activities, conducted several tests and concluded the following:

**Summary**
He demonstrates an average IQ with some difficulties. His MMPI, consistent with his reports, describe extreme irritability at times that often times explode into assaultive behavior. This, by his report, has not happened on the job, but usually more in social situations and in public and family encounters. It appears that in recent years his judgment has begun to improve. This may be directly due to his counseling.

**Medical Source Statement**
According to the testing, he would have no difficulties with understanding, remembering, and following simple instructions, complex instructions, learning new tasks. Occasionally he may have difficulty exercising judgement and making good decisions based on his cycling mood, but generally this would be fair as well. He is also able to perform routine tasks.

His ability to relate, however, to coworkers and supervisors may at times be pushed to markedly impaired, although this may vary anywhere from no impairment to marked impairment, depending on his cycle mood. Generally he has been able to control this in the work environment, but not in public and family encounters. His interaction appropriately in public encounters would vary as well, but occasionally hits the marked difficulty area. He is generally able to tolerate pressures and expectations of a normal work setting, but again, this would also reach the marked level of difficulty at times. He is improving, but it is difficult to say if all of the symptoms above could be controlled long term.

(Tr. 280-281).

1    Plaintiff argues, "Substantial evidence does not support the ALJ 's mental residual functional
2 capacity assessment, her corresponding hypothetical question, or her adverse credibility finding because
3 she did not properly evaluated Dr. Mashburn's opinion."   Plaintiff specifically argues, "Dr. Mashburn
4 found significant deficits in three areas of social functioning – relating to the public, supervisors, and co-
5 workers – while the ALJ acknowledged a significant deficit only in relating to the public."   The court is
6 not persuaded by Plaintiff's contentions.

7    The ALJ reasonably interpreted Dr. Mashburn's report.  As noted above the ALJ specifically
8 referred to Dr. Mashburn's findings in her decision.  The ALJ summarized Dr. Mashburn's report, stating:

> On June 16, 2006, David Mashburn, Ph.D., performed a consultative evaluation and
> administered psychological tests: the WAIS-III and the MMPI-II.  Dr. Mashburn noted that
> the claimant demonstrated an average IQ.  The MMPI, consistent with the claimant's report,
> describes extreme irritability at times that often explodes into assaultive behavior.  This, by
> the claimant's report, has never happened on the job but usually more in social situations
> and in public and family encounters.  Dr. Mashburn stated that in recent years, his judgment
> had improved in this regard, probably due to counseling.  According to test results, the
> claimant would have not difficulties with understanding, remembering, and following
> simple instructions, complex instructions, and learning new tasks.  Occasionally, he may
> have difficulty exercising judgment and making good decisions based on his cycling mood,
> but generally this would be fair as well.  The claimant also would be able to be able to
> perform routine tasks.  His ability to relate to coworkers and supervisors may vary, at times
> depending on his cycle mood, but generally this would be fair as well.  The claimant also
> would be able to perform routine tasks.  Generally, the claimant has been able to control this
> in the work environment.  His interaction with the public also would vary, but he would
> generally be able to tolerate pressures and expectations of a normal work setting by varying
> degrees depending on his cycle of mood.  It was noted that the claimant had been improving
> with treatment.  Dr. Mashburn assessed mild to moderate limitations in social functioning,
> and it was his opinion that without medication his social functioning would be markedly
> impaired (Exhibit 14F, p. 7).

(Tr. 22).  Supporting the finding that Plaintiff is not significantly impaired in his ability to interact socially
in a work setting, the ALJ explained:

> Probative weight was given to the examining consulting psychologists of record.  In January
> 2004, Dr. Breen noted no debilitating impairment with moderate limitations and a
> recommendation for vocational rehabilitation with consistent treatment for behavioral
> difficulties (Exhibit 1F).  Dr. Mashburn's consultative evaluation found that the claimant's
> major difficulty was his social interaction with slight to moderate limitations when he is
> compliant with mediation (Exhibit 14F).  In support of Dr. Mashburn's opinions, the
> claimant admitted in February 2005 that his angry outbursts are fairly well controlled when
> he takes lithium (Exhibit 11F); and he had improved mood, was in good spirits, and was
> stable on lithium as fo December 2004 (Exhibit 13F, p. 6).  As noted earlier in the decision,
> the opinions of marked functional limitations by Dr. Lemere (Exhibit 9F) and Dr. Hellekson
> (Exhibit 8F) were not given any probative weight because they did not consider the
> claimant's reports of substance abuse in their assessments, and/or they relied on the
> claimant's reports of abstinence.  Moreover, their opinions that the claimant has marked limitations in socia
> here, including claimant's own statements.

(Tr. 24-25).

The undersigned finds no error in the ALJ's review and analysis of Dr. Mashburn's opinion. Next, Plaintiff argues the ALJ failed to properly evaluated the opinions of Dr. Nelson and Dr. Fisher, state agency psychologists.

As discussed above the ALJ relied on Dr. Mashburn and Dr. Breen to formulate her conclusions regarding Plaintiff's mental impairments and Plaintiff's residual functional capacity. Dr. Mashburn and Dr. Breen were examining sources. Defendant concedes that the ALJ did not specifically address the physical capacity assessments of two state agency physicians, Drs. Nelson and Fisher, but contends that any error arising from this deficiency is harmless. The court agrees.

In February 2004, Dr. Nelson completed a check box mental assessment form which indicated that Plaintiff had no marked limitations, but some moderate limitations (Tr. 179-181). Dr. Fisher reviewed and concurred with the assessment in July 2004. Dr. Nelson commented that Plaintiff, with medication, is generally able to withdraw from conflict and can cooperate on work tasks (Tr. 181). The ALJ's analysis of the medical evidence is not flawed due to the ALJ's failure to include any comment or analysis of the state agency physician's evaluation. The assessment made by the state agency physicians would be given less weight than the examining physicians relied upon, and the opinions of the state agency are to a significant degree supportive of the ALJ's overall analysis. Mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless error. Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006).

In sum, the ALJ clearly was confronted with conflicting medical evidence, and she made a reasonable assessment of that evidence in light of all of the evidence in the record. In such a case, the court must uphold the ALJ's interpretation of that medical evidence which is also reflected in Plaintiff"s residual functional capacity, the hypothetical question posed to the vocational expert, and the ALJ's credibility finding.

***B. THE ALJ PROPERLY ASSESSED PLAINTIFF'S SUBSTANCE ABUSE***

On March 29, 1996, Congress enacted the "Contract with America Advancement Act of 1996," which amended various portions of the Social Security Act. Pub.L. No. 104-121, 110 Stat. 847 (1996). Section 105(a)(1)(C) of the amendments, titled "Denial of Disability Benefits to Drug Addicts and

Alcoholics," provides:

> An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

110 Stat. at 852 (1996) (amending 42 U.S.C. § 423(d)(2)). In determining whether a claimant's alcoholism or drug addiction is material under 42 U.S.C. § 423(d)(2)(C), the test is "whether an individual would still be found disabled if she stopped using alcohol or drugs." 20 C.F.R. § 404.1535(b)(1); Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir.1998). Materiality, however, only becomes an issue after the individual proves that he cannot perform any substantial gainful activity considering all his impairments including drugs and alcohol. Therefore, the ALJ first determines whether plaintiffs impairments, including his or her use of illicit drugs and/or alcohol, are disabling, and then determines whether plaintiffs impairments, absent the effects of drugs and alcohol, are disabling. Plaintiff has the burden of proving his alcoholism or drug abuse is not material to the finding of disability. Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001); Brown v. Apfel, 192 F.3d 492, 497-99 (5th Cir. 1999); Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).

Plaintiff, in the matter at hand, erroneously argues the ALJ did not follow the proper method of evaluating the substance abuse issue. Plaintiff specifically argues the ALJ did not follow the Ninth Circuit's recent reiteration of the process in Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001), which as stated above, requires the ALJ to first determine disability taking into account any substance abuse, and only if disability if found, the ALJ then determines if the disability would remain not taking the substance abuse into account. After reviewing the ALJ's decision and the ALJ's references to the record to support his decision, the undersigned is not persuaded by Plaintiff's arguments.

Here, the ALJ did not make any initial assessment of disability in this case. The ALJ simply found, taking all the medical evidence into account along with Plaintiff's testimony and the testimony of the vocational expert, Plaintiff was not disabled. The ALJ did not address the materiality of Plaintiff's past or current substance use or abuse in the context disability or impairments. Accordingly, the Bustamante, or substance abuse, analysis is not applicable under the facts of this case.

The ALJ did, however, properly consider Plaintiff's inconsistent reports of abstinence and lack of candor regarding his substance use or abuse as part of the credibility analysis (Tr. 24-25). Untruthfulness

REPORT AND RECOMMENDATION
Page - 6

about substance abuse has been held to be a clear and convincing reason to reject a claimant's testimony. <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1090 (9th Cir. 1999).

### C. THE ALJ PROPERLY ASSESSED PLAINTIFF'S ABILITY TO PERFORM PAST RELEVANT WORK

At step-four in the evaluation process, the ALJ must determine if an impairment(s) prevents the claimant from doing past relevant work. If the ALJ finds that the claimant has not shown that he is incapable of performing past relevant work, the claimant is not disabled for social security purposes and the evaluation process ends at this point. 20 C.F.R. § 404.1520(e). Plaintiff bears the burden to establish that he cannot perform his past work. <u>Roberts v. Shalala</u>, 66 F.3d 179, 184 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1356 (1996).

Plaintiff argues the ALJ failed to properly evaluate Plaintiff's ability to perform past relevant work because she failed to ask the vocational expert for an explanation of any differences between the DOT description of a construction laborer and the vocational expert's testimony.

At step-four the ALJ found Plaintiff could perform his past relevant work as a construction laborer. In support of this finding, the ALJ relied on the information from Plaintiff regarding how his prior job was actually performed, as well as vocational expert testimony regarding the mental and physical demands of Plaintiff's past relevant work as it is generally performed in the national economy (Tr. 26-27). Because the "hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record" it was proper for the ALJ to rely on the vocational expert's answer. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217-1218 (9th Cir. 2005).

Defendant concedes that the ALJ in this case did not ask the VE whether her testimony was consistent with the DOT. SSR 00-4p, available at 2000 WL 1898704; *see also* <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1153 (9th Cir. 2007). But, unlike Massachi, the ALJ's error was harmless in this case because there was no actual or apparent conflict between the VE testimony and the job data provided. <u>Massachi</u>, 486 F.3d 1154. n. 19 (procedural error may be harmless where there is no conflict). Specifically, the VE in this matter questioned Plaintiff about the specific duties he performed in his prior job as a construction worker, and then based on this description, the vocational expert testified that Plaintiff's prior work was comparable to that of a construction worker II, as listed in the DOT at § 869.687-026 (Tr. 336-337). According to the VE, the DOT listing describes this job as having a very heavy exertional level and a

REPORT AND RECOMMENDATION
Page - 7

1  "specific vocational preparation" (SVP) of 2 (Tr. 337).

2      The VE's testimony is completely consistent with the DOT description, which is described as:

> Performs any combination of following tasks, such as erecting, repairing, and wrecking buildings and bridges; installing waterworks, locks, and dams; grading and maintaining railroad right-of-ways and laying ties and rails; and widening, deepening, and improving rivers, canals, and harbors, requiring little or no independent judgment: Digs, spreads, and levels dirt and gravel, using pick and shovel. Lifts, carries, and holds building materials, tools, and supplies. Cleans tools, equipment, materials, and work areas. Mixes, pours, and spreads concrete, asphalt, gravel, and other materials, using hand tools. Joins, wraps, and seals sections of pipe. Performs variety of routine, nonmachine tasks, such as removing forms from set concrete, filling expansion joints with asphalt, placing culvert sections in trench, assembling sections of dredge pipeline, removing wallpaper, and laying railroad track. Many of these jobs are not full time; project size and organization of work determine whether workers spend their time on one job or transfer from task to task as project progresses to completion. Some workers habitually work in one branch of industry, whereas others transfer according to availability of work or on seasonal basis. Work is usually performed with other workers.

DOT at § 869.687-026, found at http://www.oalj.dol.gov/LIBDOT.HTM. Plaintiff has not argued any significant difference between the definition or description provided by the DOT and the testimony of the vocational expert. Plaintiff only argues the ALJ failed to ask the expert if there were any differences. There are not.

    In sum, the ALJ properly evaluated the evidence and determined Plaintiff could perform his past relevant work as a construction laborer.

### D. THE ALJ PROPERLY ASSESSED PLAINTIFF'S EXERTIONAL CAPACITY

    If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work activity or on medical facts alone, and a claimant has a severe impairment(s), a review is made of the claimant's residual functional capacity ("RFC") and the physical and mental demands of the work a claimant did in the past. 20 C.F.R. § 404.1520(e). The ALJ has the responsibility of determining Plaintiff's residual functional capacity. 20 C.F.R. §§ 404.1546, 416.946. "[R]esidual functional capacity" is "the maximum degree to which the individual retains the capacity for sustained performance of the physical- mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b).

1  "We will affirm the ALJ's determination of [residual functional capacity] if the ALJ applied the proper
2  legal standard and [her] decision is supported by substantial evidence." <u>Bayliss</u>, 427 F.3d at 1217.
3        Plaintiff challenges to the ALJ's finding that he does not have any physical exertional limitation.
4  Plaintiff argues there is medical evidence supporting a finding of limited range of "medium" work, which
5  does not support the ALJ's finding that Plaintiff could perform the "heavy work" or a construction laborer.
6        As noted above, the ALJ properly weighed and considered the medical evidence.  The ALJ did not
7  find any exertional limitations and he relied on the opinion of Dr. Bhaskar (Tr. 21).  Dr. Bhaskar found no
8  physical limitations; he reported normal physical findings (Tr. 157-158).  The ALJ also noted that Plaintiff
9  similarly claimed to have no severe physical impairments (Tr. 105-109), which is consistent with
10  Plaintiff's attorney's statement at the hearing that hepatitis C would not even be alleged as a severe
11  impairment (Tr. 301).  Moreover, contrary to Plaintiff's contentions, Dr. Bhaskar never affirmatively
12  "opined" that Plaintiff could not perform very heavy work, but instead assessed Plaintiff as able to perform
13  at least medium exertional work.  The ALJ's evaluation of Plaintiff's physical exertional limitations, or
14  lack thereof, is properly supported by substantial evidence and is free of legal error..

## **CONCLUSION**

16        Based on the foregoing discussion, the Court should AFFIRM the administrative decision.
17  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall
18  have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to
19  file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S.
20  140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter
21  for consideration on **April 18, 2008**, as noted in the caption.
22        DATED this 27th day of March, 2007.

              */s/ J. Kelley Arnold*
              J. Kelley Arnold
              U.S. Magistrate Judge